**Elouise Pepion COBELL, et al., Plaintiffs,**

v.

**Gale A. NORTON, Secretary of the Interior, et al., Defendants.**

**No. CIV.A. 96–1285(RCL).**

United States District Court, District of Columbia.

April 28, 2003.

---

Keith M. Harper, Native American Rights Fund, Washington, DC, Elliott H. Levitas, Kilpatrick Stockton, LLP, Washington, DC, Dennis Marc Gingold, Mark Kester Brown, Washington, DC, for plaintiffs.

J. Christopher Kohn, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Brian L. Ferrell, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, John Charles Cruden, John Stemplewicz, U.S. Dept. of Justice, Civ. Div., Washington, DC, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for Kevin Gover, defendant.

J. Christopher Kohn, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Brian L. Ferrell, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, Henry A. Azar, Jr., Sandra Marguerite Schraibman, U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Michael John Quinn, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, John Stemplewicz, Phillip Martin Seligman, Gino D. Vissicchio, Tracy Lyle Hilmer, U.S. Dept. of Justice, Civ. Div., Washington, DC, Sandra Peavler Spooner, John Warshawsky, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, John J. Siemietkowski, John R. Kresse, Timothy E. Curley, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Charles Walter Findley, III, Sarah D. Himmelhoch, U.S. Dept. of Justice, Environment and Natural Resources, Washington, DC, Edith R. Blackwell, Washington, DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, for Dept. of Interior.

J. Christopher Kohn, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, Henry A.

Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, John Stemplewicz, U.S. Dept. of Justice, Civ. Div., Washington, DC, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Charles Walter Findley, III, Sarah D. Himmelhoch, U.S. Dept. of Justice, Environment and Natural Resources, Washington, DC, Washington, DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, Daniel Gordon Jarcho, Herbert Lawrence Genster, Christina M. Carroll, Michael James Bearman, McKenna Long & Aldridge, LLP, Washington, DC, for Gale Norton.

Robert D. Luskin, Patton Boggs, LLP, Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for John D. Leshy, Edward B. Cohen.

Henry A. Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Elizabeth Wallace Fleming, Trout & Richards, P.L.L.C., Washington, DC, for Michael G. Rossetti.

B. Michael Rauh, Manatt, Phelps & Phillips, L.L.P., Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, Tracy Lyle Hilmer, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, for Neal McCaleb.

Lawrence H. Wechsler, Janis, Schuelke & Wechsler, Washington, DC, for Eleni M. Constantine.

Donald Michael Barnes, Porter, Wright, Morris & Arthur, Washington, DC, for Roberta McInerney.

David Booth Beers, Shea & Gardner, Washington, DC, for James Regan.

William Aaron Dobrovir, Sperryville, VA, for Daniel Mazella.

Pamela J. Marple, Manatt, Phelps & Phillips, Washington, DC, for Randall Lewis.

Timothy Patrick Garren, U.S. Dept. of Justice, Civ. Rights, Div., Washington, DC, for U.S.

Brian L. Ferrell, U.S. Dept. of Justice, Washington, DC, Gino D. Vissicchio, John Warshawsky, John J. Siemietkowski, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for Dept. of Treasury.

Erik Lloyd Kitchen, Steptoe & Johnson, L.L.P., Washington, DC, for Ingrid D. Falanga.

Martha Purcell Rogers, Ober, Kaler, Grimes & Shriver, Washington, DC, for Timothy S. Elliott.

Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, Amy Berman Jackson, Trout & Richards, P.L.L.C., Washington, DC, for Edith R. Blackwell.

Roger Eric Zuckerman, Zuckerman Spaeder, LLP, Washington, Dc, for Robert Lamb.

Kathleen Elizabeth Voelker, Washington, DC, for James Douglas.

Stephen M. Byers, Crowell & Moring, L.L.P., Washington, DC, for Dominic Nessi.

Leslie B. Kiernan, Zuckerman Spaeder, LLP, Washington, DC, for Hilda Manuel.

Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for M. Sharon Blackwell.

L. Barrett Boss, Asbill, Moffitt & Boss, Chartered, Washington, DC, for Steven Swanson.

Plato Cacheris, John Francis Hundley, Baker & McKenzie, Washington, DC, Sydney Jean Hoffmann, Law Offices of Plato Cacheris, Washington, DC, for John Berry, Glenn Schumaker.

Barbara Ann Van Gelder, Wiley Rein & Fielding, LLP, Washington, DC, for James A. Eichner.

William Holt Briggs, Jr., Marc Evan Rindner, Laura C. Zimmitti, Ross, Dixon & Bell, LLP, Washington, DC, for Phillip A. Brooks.

Thomas Edward Wilson, Berliner, Corcoran & Rowe, L.L.P., Washington, DC, for John S. Most.

Mary Lou Soller, Miller & Chevalier, Chartered, Washington, DC, for Chester Mills, Terrance Virden.

Jeffrey David Robinson, Melissa Heitmann McNiven, Baach, Robinson & Lewis, Washington, DC, for Lois J. Schiffer.

Dwight Phillip Bostwick, Melissa Heitmann McNiven, Baach, Robinson & Lewis, Washington, DC, for Anne Shields.

Larry Allen Nathans, Robert W. Biddle, Bennett & Nathans, L.L.P., Baltimore, MD, for David Shuey.

John Kenneth Zwerling, Zwerling & Kemler, P.C., Alexandria, VA, for Terry Steele.

Russell David Duncan, Lisa Ann Freiman Fishberg, Coburn & Schertler, Washington, DC, Steven John Roman, John Albert Gibbons, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for John A. Bryson, David Shilton.

E. Lawrence Barcella, Jr., Paul, Hastings, Janofsky & Walker, L.L.P., Washington, DC, for William G. Myers, III.

David Sidney Krakoff, Alessio D. Evangelista, Beveridge & Diamond, P.C., Washington, DC, for Daryl W. White.

Michael D. Goodstein, Resolution Law Group, PC, Washington, DC, for Tom C. Clark, II.

Bradley Stuart Lui, Morrison & Foerster, LLP, Washington, DC, for Sabrina McCarthy.

Stanley M. Brand, Andrew Dewald Herman, Brand & Frulla, P.C., Washington, DC, for Peter D. Coppelman.

Marshall L. Matz, Olsson, Frank & Weeda, P.C., Washington, DC, for Michael B. Jandreau.

Jefferson McClure Gray, D. Jacques Smith, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Kenneth Paquin, Kenneth Russell.

Emily M. Yinger, Hogan & Hartson, McLean, VA, for Accenture LLP.

William Leonard Gardner, Brian Michael Privor, Morgan, Lewis & Bockius, L.L.P., Washington, DC, for Willa B. Perlmutter.

Hamilton Phillips Fox, III, Sutherland, Asbill & Brennan, L.L.P., Washington, DC, for Charles W. Findlay.

Christopher J. Lovrien, Robert Christopher Cook, Jones Day, Washington, DC, for Michael Carr.

Dennis Marc Gingold, Washington, DC, for James Simon.

Robert A. Salerno, Piper Rudnick LLP, Washington, DC, for Sarah Himmelhoch.

Bruce Allen Baird, Michael X. Imbroscio, Nicole Jo Moss, Covington & Burling, Washington, DC, for Bert T. Edwards.

Amy S. Koch, Cameron McKenna, Washington, DC, Stephen R. Ward, Conner & Winters, P.C., Tulsa, OK, Jason B. Aamodt, Wrightman Mansion, Tulsa, OK, for Quapaw Tribe of Oklahoma.

Charles Allan Hobbs, Hobbs, Straus, Dean & Walker, Washington, DC, Geoffrey D. Strommer, Hobbs, Sraus, Dean & Walker, Portland, OR, for National Congress of American Indians.

George Joseph Hughes, Hughes & Bentzen, PLLC, Washington, DC, for Michael P. Bentzen.

Alan Lee Balaran, Washington, DC, pro se.

Richard Lee Cys, David Wright Tremaine, Washington, DC, Jonathan K. Tycko, Tycko Zavareei, LLP, Washington, DC, for Dow Jones & Co., Inc.

Christopher B. Mead, London & Mead, Washington, DC, for Kenneth F. Rossman.

Albert Lee Bynum, Godsden, AL, pro se.

Nathaniel Davis Owens, Sr., Anniston, AL, for Albert Lee Bynum.

Jill Elise Grant, Nordhaus, Haltom, Taylor, Taradash & Bladh, LLP, Washington, DC, for Intertribal Monitoring Ass'n for Indian Trust Funds.

Neil James Ruther, Towson, MD, for Native American Industrial Distributors, Inc.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on plaintiffs' motion for partial summary judgment as to the non-settlement of accounts and defendants' failure to perform the accounting, in whole or in part, ordered by this Court on December 21, 1999 [1777–1], which was filed on January 31, 2003. Upon consideration of plaintiffs' motion, defendants' opposition thereto, plaintiffs' reply brief, and the applicable law in this case, the Court finds that plaintiffs' motion should be granted in part and denied in part.

### I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court explicated the words of this Rule in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court set forth the task of a court deciding a motion for summary judgment:

> There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

This same case made clear that "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. On the issue of whether a dispute about a material fact is genuine, the Court has observed that

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial".

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote and internal citations omitted) (emphasis in original).

Although the Justices in *Celotex* disagreed as to how the standard for summary judgment should have been applied to the facts of the case, they agreed on the nature of the burdens of proof involved in a summary judgment motion. The dissenting opinion authored by Justice Brennan summarized the applicable standards:

> The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. The court need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged its initial burden of production.
>
> The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment. The manner in which this showing can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial. If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence-using any of the materials specified in Rule 56(c)-that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second,

the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.

*Celotex,* 477 U.S. at 330–31, 106 S.Ct. 2548 (Brennan, J., dissenting) (emphasis in original) (footnotes and internal citations omitted).

## II. LEGAL ANALYSIS OF PLAINTIFFS' MOTION

Plaintiffs have moved for partial summary judgment on the issue of whether, to date, defendants have performed any accounting of the individual Indian money ("IIM") trust or any beneficiary's interest therein. Before turning to the merits of plaintiffs' motion, however, the Court must examine the threshold issues of whether the facts presented are material and whether plaintiffs' motion is ripe for consideration by this Court.

### A. Materiality and Ripeness

In its September 17, 2002 memorandum opinion, the Court explained that it would hold a Phase 1.5 trial to consider whether "further injunctive relief with respect to the fixing the system portion of the case and the historical accounting project" was warranted. *Cobell v. Norton,* 226 F.Supp.2d 1, 148 (D.D.C.2002). It further explained that "the Phase 1.5 trial will encompass additional remedies with respect to the fixing the system portion of the case, and approving an approach to conducting a historical accounting of the IIM trust accounts." *Id.* The Court ordered both parties to submit motions for summary judgment "with respect to the

Phase 1.5 trial" no later than January 31, 2003. *Id.* at 149.

Defendants presently allege that plaintiffs' motion for partial summary judgment "has absolutely nothing to do with the Phase 1.5 trial" because the issue of whether the General Accounting Office (GAO) performed any settlement of IIM accounts is not discussed in the plans filed by the parties on January 6, 2003. As to what constitute "material facts" for summary judgment purposes, the Supreme Court has stated that "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. On September 17, 2002, the Court ordered defendants to file a plan for conducting a historical accounting of the IIM trust accounts. Therefore, the issue of whether any settlement of IIM accounts has occurred is certainly a material issue in the Phase 1.5 trial. The fact that defendants' plan does not discuss the issue of whether the GAO settled the IIM accounts does not render that issue immaterial. Rather, it simply means that plaintiffs, not defendants, possess the burden of persuasion at trial on the issue of whether or not the GAO ever settled the accounts. The implications of this burden will be explained below.

Defendants further argue that plaintiffs' motion raises issues that are not ripe for review because "it is entirely speculative at this time whether, in performing the accounting, Interior will rely on any GAO documents regarding these settlements, the issue of whether GAO settled accounts and of the proper use to be made of documents concerning such settlements is not ripe for decision." As explained above,

however, the scope of the Phase 1.5 trial includes both the determination of additional remedies with respect to the fixing the system portion of this case, and the approval of an approach to conducting a historical accounting of the IIM accounts. Therefore, the issue of whether any settlement of these accounts has occurred is certainly ripe for determination by the Court. Accordingly, because the facts alleged not to be in dispute are material, and the issue of whether they are uncontroverted is ripe for decision by the Court, the Court will turn to the issue of whether plaintiffs have established that there is no genuine issue as to each of these facts.

### B. The Evidence Submitted by Plaintiffs

As stated above, plaintiffs possess the burden of persuasion at trial on the issue of whether the GAO ever settled the IIM accounts. Therefore, plaintiffs must provide support on this issue in the form of credible evidence that would entitle them to a directed verdict at trial, if the evidence were not controverted. If they provide such evidence, they have satisfied their burden of production (although, as noted above, the burden of *persuasion* always remains with them). The burden of production then shifts to defendants, who must supply credible evidence demonstrating the existence of a genuine issue for trial on the facts alleged by plaintiffs. If defendants fail to provide such evidence, they have failed to satisfy their burden of production, and the Court may conclude that plaintiffs have prevailed on their burden of persuasion, entitling them to partial summary judgment.

The evidence that plaintiffs have submitted consists of two letters from GAO senior officials as the foundation for their motion for partial summary judgment. It will be useful to provide quotes from these letters as some length, in order to avoid the need for redundant quotations in conjunction with each allegedly undisputed factual statement.

The first letter, which is dated August 27, 1999, was sent by Gene Dodaro, principal assistant to the Comptroller General, to John Berry, Assistant Interior Secretary—Policy Management and Budget. In this letter, Dodaro stated that he was responding to Berry's letter of June 18, 1999 seeking the assistance of the GAO in evaluating a series of records that Berry believed "may contain Indian accounting records subject to disclosure in the *Cobell* litigation," and requesting any "historical information about the nature of any accounting regarding individual Indian accounts that was undertaken by GAO in the past, including the standards and procedures that GAO may have employed." Dodaro responded:

> We have conferred with GAO's historian and with officials and staff members in GAO's Accounting and Information Management Division, the unit that has the most recent knowledge of the Bureau of Indian Affairs (BIA) accounting operations. Unfortunately, no one currently employed at GAO participated in audits of the IIM accounts, which took place at various times from the 1920's through the 1950's. Given the number of years that have passed, we have no direct knowledge about the nature of any accounting regarding individual Indian accounts previously undertaken by GAO, or the standards or procedures used.

> Our research has revealed a small amount of historical data on GAO's involvement with Indian accounts or claims. For example, GAO's annual report for 1931 listed individual Indian monies as part of a summary of its audit work with quasi-public funds. In at

least one instance, in 1928, Congress passed a specific authorization requesting GAO to audit the fiscal condition of Indian tribes as of June 30, 1928. GAO's report to Congress, issued in February 1929, contains a section on IIM accounts. In addition, we have located GAO audit reports on Indian moneys for the years of 1952 and 1955. We understand that the Department of the Interior has copies of the reports for 1929, 1952, and 1955....

Over the past several weeks, GAO staff have had numerous telephone conversations with members of your staff and attorneys from the Justice Department, as well as a meeting with Treasury officials, to answer questions and share information. In response to questions, we have explained that our records do not establish that GAO conducted a "final" GAO comprehensive audit of IIM accounts, nor do they establish any regular practice of auditing IIM accounts.

Pls.' Mot. for Partial Summ. J. as to the Non–Settlement of Accounts and Defs.' Failure to Perform the Accounting, in Whole or in Part, Ordered by this Court on December 21, 1999 ("Pls.' Mot."), Ex. 1.

The second letter is from Anthony Gamboa, GAO general counsel, to Bert Edwards, the executive director of Interior's Official of Historical Trust Accounting, and is dated April 19, 2002. Gamboa explained that he was responding to two letters from Edwards requesting that the GAO "confirm [Edwards's] understanding that GAO, between 1921 and 1950, settled the accounts of the IIM Trust Fund, and that we provide you with certified balances of those accounts as of 1950." Gamboa stated:

In response to your first question, GAO did not settle the IIM accounts, and we are not aware of any record of certified

balances of those accounts. The United States government holds IIM accounts in trust for individual Indian beneficiaries. These accounts are comprised of oil, gas and minerals royalties; income from land use agreements; payments of claims against the federal government; and investment income. These are nonappropriated, nongovernmental funds.

Indian disbursing officers are responsible for disbursing funds from the IIM accounts, as well as from appropriated funds advanced from the United States Department of the Treasury (Treasury). The IIM accounts are legally distinct from the disbursing officer's account and hold the funds of the individual Indian account holder, not government funds. Until 1950, GAO regularly settled the accounts of all executive agencies' disbursing officers, including those of the BIA Indian agents, to ensure that disbursing officers accounted for appropriated funds in accordance with appropriations made by law, and that they applied funds only for the purposes stated in the appropriations laws. GAO's accounts settlement authority did not extend to nongovernmental funds. While disbursing officers were required to account for IIM transactions that flowed through their accounts, GAO did not settle the IIM accounts themselves.

Pls.' Mot., Ex. 2. Gamboa included with the letter an enclosure entitled "Settlement of Accounts" elaborating upon the difference between IIM accounts and accounts maintained by Indian Service disbursing agents:

You asked that we confirm your understanding that the [GAO], between 1921 and 1950, settled the accounts of the Individual Indian Money (IIM) Trust Fund, and that we provide you with certified balances of those accounts as of 1950. During this period, GAO

actively audited and settled the accounts of accountable officers of the United States including Indian Service disbursing officers. While such officers may have had transactions with IIM accounts that ran through their accounts, GAO did not audit and settle IIM accounts as such. Accordingly, we are not aware of a record of the balances of those accounts as of 1951....

Between 1921 and 1950, GAO regularly audited and settled the accounts of all executive agencies' disbursing officers, including those of the BIA Indian agents, to ensure that the disbursing officers accounted for funds in accordance with appropriations made by law, and that they applied funds only for the purposes stated in the appropriations laws. GAO did not settle other accounts, such as IIM accounts, with which disbursing officers may have engaged in transactions....

Of particular interest to you would be a 1925 regulation of the Comptroller General, which describes with some specificity GAO's procedure for settling the accounts of the Indian Service Disbursing officers....

The regulation did not direct GAO to settle the accounts of the individual Indians, or otherwise indicate that a settlement of the disbursing officers' accounts would include settling the individual Indians' accounts. The regulation itself does not address IIM accounts, and GAO's general practice under the [Budget and Accounting Act of 1921] of settling disbursing officers' accounts does not establish that GAO would have settled IIM accounts. Consistent with the genesis of accounts settlement in the early nineteenth century, our examination of disbursing officers' accounts under the 1921 Act focused on appropriated, not private, funds, to ensure disbursing officer accountability for funds charged to them in accordance with appropriations made by law. These IIM accounts were legally distinct from the disbursing officer's account and held the funds of the individual Indian account holder, not government funds. As a result, we would not have expected GAO, as part of settling an Indian Service disbursing officer's account, to settle IIM accounts.

Undoubtedly, given the nature of their work, Indian Service disbursing officers would have engaged in transactions with individual Indians and IIM accounts. Because GAO examined disbursing officers' disbursement and receipt vouchers, GAO's settlement of disbursing officers' accounts likely would have confirmed the accuracy of, or taken exception to, the disbursing officers' withdrawals from and credits to the IIM account so long as those transactions were vouchered transactions. A review of transactions between the disbursing officer's account and individual Indians, in the context of an examination of the account of the Indian Service disbursing officer and from the perspective of the disbursing officer's actions, would not constitute a settlement of the individual Indians' accounts with which that disbursing officer had transacted business, any more than a review of transactions between any federal agency disbursing officer and other accounts with which he or she engaged in transactions would constitute a settlement of those other accounts.

A settlement of an IIM account at a minimum would have required the same scrutiny of the IIM account and its activity as that to which GAO subjected disbursing officers' accounts. Only an examination of the records of the IIM account itself would ensure the propriety and accuracy of amounts credited

and withdrawn, reconcile transactions with a statement of the account, and identify whether otherwise, not disbursing officers, had withdrawn amounts from or credited amounts to the account properly....

Because GAO did not settle IIM accounts, GAO did not maintain records of certified balances of IIM accounts. The only GAO records that we have located that present IIM balances are a 1929 report and its follow-up 1952 report. The 1952 report ... included ... only "those funds of individual Indians ... on deposit with the Indian Service Special Disbursing Agents." GAO reported the lump sum amount of Individual Indian Moneys held by each of the Indian agencies throughout the country as of June 30, 1951. GAO, however, did not report balances of individual Indian accounts themselves. The report noted that "it has been impracticable to canvass all private banks to ascertain the amounts of individual Indian accounts maintained." ....

Neither the 1929 nor the 1952 study resulted from a regular routine audit or settlement of the accounts of the IIM trust fund, and neither reported certified balances of the individual Indians' accounts. GAO undertook the 1929 study in response to a directive in an appropriations law; GAO initiated the 1952 study in response to a Senate resolution. Neither study referred to or drew on any settlements of IIM accounts. Had GAO settled the accounts of individual Indians during this time period, we would have expected these reports to have referred to that practice and to have drawn from the reports of such settlements.

*Id.* (footnotes omitted).

C.   Facts Allegedly Not in Dispute

In support of their motion, plaintiffs have submitted seventeen statements al-leged to be statements of material fact as to which there is no genuine issue. Because of the relatively small number of statements of allegedly undisputed facts, the Court will examine each of them in turn.

1.   *Whether, at any time, the General Accounting Office (GAO) has conducted an accounting of any individual Indian trust accounts.*

As indicated above, the question before the Court is whether plaintiffs have provided credible evidence on this issue that, if uncontroverted, would entitle plaintiffs to a directed verdict that the GAO has never conducted an accounting of any individual Indian trust accounts. If plaintiffs provide such evidence, the burden of production shifts to defendants to supply credible evidence to the contrary, that is, that at some point in time, the GAO conducted an accounting of at least one individual Indian trust account. If defendants submit evidence such that a reasonable finder of fact could find in their favor on this issue, the Court must deny summary judgment for plaintiffs; if they fail to provide such evidence, the Court will grant summary judgment for plaintiffs as to this issue.

One further preliminary matter must be resolved before proceeding to address this question: the establishment of a definition for the term "accounting." In the context of this litigation, the D.C. Circuit observed that "[i]t is black-letter trust law that '[a]n accounting necessarily requires a full disclosure and description of each item of property constituting the corpus of the trust at its inception.' *Engelsmann v. Holekamp,* 402 S.W.2d 382, 391 (Mo.1966); *see also* BLACK's LAW DICTIONARY (7th ed.1999) (defining accounting as 'the report

of all items of property, income, and expenses' prepared by the trustee for the beneficiary)." *Cobell v. Norton,* 240 F.3d 1081, 1103 (D.C.Cir.2001). The Court thus understands an "accounting" of a trust to constitute a detailed report provided by a trustee for a beneficiary describing the trustee's conduct during the relevant time period, including a description of each item of property within the trust corpus, all items of property received into or disbursed from the trust, all income earned by the trust, and all expenses paid by the trust.

Plaintiffs assert that there is no evidence that the GAO has ever conducted an accounting of any individual Indian trust accounts. In support of this assertion, plaintiffs point to the statement of Gene Dodaro, quoted above, that the GAO possesses "no direct knowledge about the nature of any accounting regarding individual Indian accounts previously undertaken by GAO, or the standards or procedures used." Additionally, the GAO general counsel attests several times in his letter that the GAO never settled IIM accounts. The Court understands the terms "accounting" and "settlement of accounts" to be synonymous. *See* BLACK'S LAW DICTIONARY 19 (7th ed.1999) (identifying the primary definition of "accounting" as "[t]he act or a system of establishing or settling financial accounts"). Accordingly, plaintiffs have provided credible evidence that, if uncontroverted, would entitle plaintiffs to a directed verdict that the GAO never conducted an accounting of any individual Indian trust accounts. Plaintiffs have therefore satisfied their burden of production under Rule 56. Because plaintiffs have satisfied this burden, defendants now have the burden of producing credible evidence that a genuine issue of material fact exists as to this issue.

Defendants first direct the Court's attention to four sentences contained in a 1938 annual report from the acting comptroller general under the heading "Individual Indian moneys":

These accounts embrace an accounting by agents of the Indian Service for private funds of individual Indians received and disbursed. The audit consists of a determination as to compliance with the law, regulations and decisions governing the expenditure of Indian moneys. The complete accounting embraces both collections and disbursements for the account of the individual Indian. The decisions for application are those of the former Comptrollers of the Treasury, the Comptroller General, the Secretary of the Interior, and the Courts.

Defs.' Opp. Br., Ex. 8 at tab 14. It should first be noted that defendants submitted only the title page of this report and the page on which these sentences appear, not the full report. Therefore, the Court is unable to examine this passage in its surrounding context. Nevertheless, upon reviewing the passage itself, it is clear that it does not refer to any accounting allegedly performed by the GAO on individual Indian money accounts. Instead, it merely reports that an accounting was performed by disbursing agents of the Indian Service on their own accounts, which included funds received from and disbursed into IIM accounts. There is no indication that an accounting was performed on individual Indian trust accounts. It would be quite remarkable if it did, because although the documents cited by defendants in their opposition brief do state that the accounts of Indian disbursing agents were settled by the GAO, none of these documents states that individual Indian trust accounts were settled. And an accounting of the former would no more constitute an accounting of the latter than a settlement of the Treasury Department's budget would

constitute an accounting of the checking account of a federal employee.

Thus, for example, defendants have submitted a copy of the 1921 act creating the GAO, which provided that the agency should assume "[a]ll powers and duties . . . relating to keeping the personal ledger accounts of disbursing and collecting officers." *Id.*, Ex. 2 at tab 15. Additionally, defendants have submitted a 1929 report of the comptroller general on Indian funds stating that

> [t]he Indian fiscal agents render to the General Accounting Office a monthly accounting for all funds except as hereinafter set forth coming into their possession on account of the Indians. Schedules of collections are supported with copies of official receipts issued for the moneys collected, and all disbursements are supported by vouchers or other documents showing the expenditure to have been properly authorized. These accounts are audited by the General Accounting Office and the balances reported verified.

*Id.*, Ex. 8 at tab 10. The same report noted that in 1928, the GAO had conducted "not only the inspection of the disbursing agents' accounts, but also a careful examination of the accounting records and the classification of tribal funds revenues and disbursements" for the previous five years, and had "test checked" the accounts maintained by individual Indians. *Id.* More relevant to the present inquiry, however, are the paragraphs that immediately precede the passage quoted above:

In the following statements are set forth the balances as of June 30, 1928, of the tribal funds, including "Indian moneys, proceeds of labor." There are also shown the amounts of moneys belonging to individual Indians held by the Indian Service disbursing agents and banks and invested in securities.

While Congress authorizes the use of tribal funds, the superintendents at the several Indian units exercise jurisdiction over individual Indian moneys within limits prescribed by the Commissioner of Indian Affairs. *No detail check could be made or all revenues accruing to the individual Indians to determine that each received all to which he was entitled, nor could the expenditures thereof, authorized by the superintendents, be examined to see that the Indian received the full measure of benefit to which he was entitled.*

*Id.* (emphasis added).[1] Thus, the 1929 report actually provides further support for plaintiffs' assertion that the GAO never conducted an accounting of any IIM accounts.

Nor does the correspondence between the comptroller general's office and the Secretary of the Interior cited by defendants provide any evidence that GAO ever conducted such an accounting. Instead, the comptroller general merely verifies that the GAO is required by law to audit and settle "the accounts of the various superintendents, accountable officers, who are, generally speaking, designated as the collection officers under the various regulations promulgated for the leasing of min-

---

1. Additionally, on the first page of his report, the comptroller general notes that

> [f]requently in the audit of the accounts of the Indian Service disbursing agents, questions arise as to the correctness of the funds credited with the various amounts reported as having been collected, and as the accounts of the several disbursing agents re-

port balances under gratuity appropriations, tribal funds, and individual Indian moneys, the investigators were directed to also make an inspection of the accounts of the disbursing agents as contemplated by section 312-a of the Budget and Accounting Act[.]

*Id.*

eral lands belonging to the Indians." *Id.*, Ex. 8 at tab 17. Although defendants claim that "Interior's regulations specifically addressed the settlement of accounts and required that receipts and disbursements of individual Indian monies be subject to the settlement procedure," the list of bookkeeping and accounting regulations adopted by the Interior Department on February 4, 1927, which defendants cite in support of this statement, actually demonstrates the opposite. In the very first pair of enumerated regulations in this list, the Interior Department demonstrated that the Indian disbursing agent accounts and IIM accounts were subject to very different standards:

1. The object of the Indian Service system of bookkeeping and accounting is to enable disbursing officers properly to account for all receipts and disbursements by appropriations and funds and to show the location of their balances; that is, whether they are on hand or deposited, and, if the latter, in what depositories. To be effective the system must provide currently the following information relative to each appropriation and fund, *except Individual Indian Money and Special Deposits.*

   (a) *Treasury Cash.*—Balance of allotments which is available for advance to the disbursing officer or for direct settlement of claims by the General Accounting Office.

   (b) *Disbursing Officer's Cash.*— Amount in hands of disbursing office or subject to his check, including balances of advances and collections.

   (c) *Allotments.*—Balance of funds which have been allotted and which are still available for encumbrance.

   (d) *Encumbrances.*—Balance of actual or contingent liabilities which re-

main to be liquidated by payment or cancellation.

   (e) *Unavailable Funds.*—Balance of funds in the custody of the disbursing officer which have been collected but which are not available for disbursement.

2. *For "Individual Indian Money" and "Special Deposits" it is necessary to show only the amount of disbursing officer's cash under the several subtitles and the amount in individual Indian money banks.*

*Id.*, Ex. 6 at tab 7 (emphasis added). In other words, although the Interior Department's regulations required a settlement of disbursing agent accounts, it made no such requirement for IIM accounts. Similarly, the declaration of Frank Sapienza demonstrates only that accounts of Indian disbursing agents, not IIM accounts, were settled by the GAO.

Moreover, it is entirely false for defendants to claim that "[t]he accounts of individual Indians were routinely reviewed and corrected by both Interior and GAO between 1921 and 1951." Defs.' Opp. Br. at 19. The sole evidence for this bald assertion is a semiannual statement prepared for the IIM account of one of the named plaintiffs in this action, which defendants claim "reveals two credits of specified amounts" to the account, purportedly representing "adjustments [that] resulted from the settlement procedure" of the disbursing agents' accounts. *Id.* Indeed, there are two notations beside which are written "Ref ... Gen. Acctg Office Exceptn" and "Refund ... GAO Exception." However, defendants fail to point out that these notations do not reflect credits to the account but rather two *debits* for the amount specified. Defendants do include a page from a journal voucher dated June 19, 1940 instructing that a refund should be made to the account for these two debits. But the heading on this page is

"Department of the Interior / Office of Indian Affairs," not the GAO, and defendants did not submit any statement indicating that the refund was actually made. Even assuming that such a refund was made, the Court is at a loss to understand how a reversal ordered by the Interior Department of two debits totaling less than eleven dollars from an IIM account constitutes evidence that the GAO performed an accounting of this account, much less that the agency "routinely reviewed and corrected" these accounts. One refund does not an accounting make.

Finally, defendants cite a May 19, 1932 memorandum prepared for the Commissioner of Indian Affairs in response to a Senate proposal that the Interior Department prepare and transmit annual statements to all IIM account holders presenting all debits to and credits from each IIM account—in other words, that the Interior Department perform an annual accounting of each IIM account. The Interior Department responded that it did prepare and send such annual statements for all funds held by tribes. As for doing the same with respect to IIM accounts, however, the Department demurred:

> For the Department to furnish each individual Indian with an annual statement of his personal account would appear to be physically impracticable without an increase in the clerical force, inasmuch as the number of accounts to be compiled and stated would be in the neighborhood of 20,000. However, it is not believed to be good policy to furnish all Indians with such statements.... In our opinion the status of an Indian's personal account ought to be a matter between him and the superintendent,

who is required by existing instructions to furnish a statement of account to any Indian at any time upon request of the party in interest.

*Id.,* Ex. 5 at tab 6. Defendants apparently believe that the fact that Indian superintendents were "required by existing instructions" to provide an accounting, upon request, to any IIM holder who requested one constitutes evidence that accountings were performed on IIM accounts. But defendants fail to provide any evidence that even a single statement of account was ever "furnish[ed] ... to any Indian" by a superintendent. The fact that the superintendents were "required by existing instructions" to do so no more establishes that they actually did than the fact that defendants are required by law not to submit fraudulent quarterly reports means that they did.[2]

■ In sum, plaintiffs have provided credible evidence that the GAO never conducted an accounting of any individual Indian trust accounts. By contrast, defendants have presented no evidence from which a rational finder of fact could conclude that at some point in time, the GAO conducted an accounting of at least one individual Indian trust account. Accordingly, the Court will enter summary judgment for plaintiffs that the GAO has never conducted an accounting of any individual Indian trust accounts.

2. *Whether, at any time, the United States government has conducted an accounting of individual Indian trust assets.*

■ Plaintiffs have failed to direct the Court to any credible evidence showing

---

**2.** The same can be said for a similar piece of "evidence"—namely, a single sentence that superintendents and disbursing agents are "hereby authorized and instructed to furnish semi-annually to each Indian under their jurisdiction, who has an individual Indian money account, a statement of receipts and disbursements similar to periodic statements furnished by banks" contained in a 336–page, double-spaced list of Interior accounting regulations from 1935.

that the United States government has never conducted an accounting of the *assets* held in trust for the IIM beneficiaries, as opposed to an accounting of the IIM *accounts* themselves. Plaintiffs possess the burden of providing credible evidence that the federal government never conducted an accounting of the trust property of the IIM accounts, and that this evidence would entitle them to a directed verdict at trial if uncontroverted. Because plaintiffs have not done so, they have not satisfied their burden of production. The Court will therefore deny summary judgment for plaintiffs as to this issue.

3. *Whether, at any time, the GAO has conducted a final comprehensive audit of individual Indian trust accounts.*

In support of their assertion that "[a]t no time has GAO conducted a final comprehensive audit of individual Indian trust accounts," plaintiffs cite the portion of Gene Dodaro's letter stating that "[i]n response to questions, we have explained that our records do not establish that GAO conducted a 'final' GAO comprehensive audit of IIM accounts, nor do they establish any regular practice of auditing IIM accounts." In challenging this assertion, defendants state that Dodaro's letter "does not contain the unqualified statement that GAO never conducted a 'final comprehensive audit of individual Indian trust accounts,' nor does it define the meaning of a 'final comprehensive audit.'" The Court will examine each of these statements in turn.

The Dodaro letter states, in plain language, that the records of the GAO do not establish that the GAO had conducted a "final GAO comprehensive audit of IIM accounts." Defendants' attempt to twist this straightforward statement that the GAO had no such records into the lesser claim that *Dodaro's* review of GAO records had turned up no evidence of such an audit is belied by the sentence immediately preceding the one quoted by plaintiffs. Dodaro plainly states that "GAO *staff* have had numerous telephone conversations with members of your staff and attorneys from the Justice Department, as well as a meeting with Treasury officials, to answer questions and share information." It is thus plain that the conclusions stated by Dodaro in the following sentence represent conclusions reached by the staff of the GAO as a whole, not just Dodaro's individual conclusions.

Not content with interpreting "our" to mean "my," defendants continue their Clintonian word-games by claiming that the phrase "final comprehensive audit" is meaningless because the letter does not define these terms. This claim calls to mind a retort by Senator Sam Ervin to John Ehrlichman during the Watergate hearings regarding how Ervin knew a fact that all conceded to be obvious: "Because I understand the English language. It is my mother tongue." Although defendants purport not to understand the meaning of the phrase "final comprehensive audit," it would seem plain to any English speaker. An "audit" is a review of accounting records conducted by a person or entity other than the person or entity who prepared the records. *See* BLACK'S LAW DICTIONARY 126 (7th ed.1999) (defining "audit" as a "formal examination of an individual's or organization's accounting records, financial situation, or compliance with some other set of standards."). A "final comprehensive audit" would thus be a review of all accounting records maintained by an organization that was not intended to be superseded.

Plaintiffs have satisfied their burden of presenting credible evidence that, if uncontroverted, would entitle them to a directed

verdict that GAO never conducted a final comprehensive audit of IIM accounts.[3] The Court must therefore determine whether defendants have presented any credible evidence that, at some point in time, the GAO conducted a final comprehensive audit of IIM accounts.

Instead of providing such evidence, defendants direct the Court to "GAO documents [that] reflect the results of GAO activities with regard to Individual Indian Moneys, which included audit efforts," including all of the documents cited in its response to Statements 1 and 2. Having reviewed these documents, the Court can fairly say that they provide no evidence that the GAO ever conducted a final comprehensive audit of IIM accounts. The Court has already discussed the documents that defendants cited in their response to Statement 1, which contain no mention of any final comprehensive audit performed on IIM accounts. As for the two documents cited by defendants in their response to Statement 2, defendants seem to be wholly unaware that the first document is the same 1929 GAO report that defendants included in an earlier appendix, and which the Court has discussed above. *Cf.* Defs. Opp. Br. at Ex. 8, tab 10 *with id.* at Ex. 21. The Court has already observed that this report fails to establish that the GAO conducted an accounting of any IIM accounts, much less a comprehensive audit. The second document is an April 1, 1952 report from the comptroller general to the Senate regarding Indian tribal funds. Although this report does briefly mention "Individual Indian moneys," by that term it refers only to "those funds on deposit with the Indian Service Special Disbursing Agents," not IIM ac-

counts. *See id.* Ex. 21, at III. It also notes that "[t]he funds reported herein as Individual Indian Moneys in no way reflect the economic well-being of the individual Indian or his monetary status *since it has been impracticable to canvas all private banks to ascertain the amounts of individual Indian accounts maintained.*" *Id.* Ex. 21, at 171 (emphasis added). In other words, the 1952 report merely provides further support for plaintiffs' assertion that the GAO never conducted any accounting or audit of IIM accounts, but instead restricted its inquiries to tribal funds and Indian Service disbursing agent accounts.

■ Although plaintiffs have satisfied their burden of production as to this issue, defendants have failed to provide any credible evidence in response. Therefore, the Court will enter summary judgment for plaintiffs that the GAO has never conducted a final comprehensive audit of individual Indian trust accounts.

4. *Whether, at any time, the GAO has engaged in any regular practice of auditing individual Indian trust accounts.*

■ In support of their assertion that "[a]t no time has the GAO engaged in any regular practice of auditing individual Indian trust accounts," Plaintiffs rely on the portion of the Dodaro letter stating that the records of the GAO "do not establish ... any regular practice of auditing IIM accounts." The Court finds that plaintiffs have satisfied their burden of providing credible evidence that, if uncontroverted, would entitle them to a directed verdict that the GAO never had a regular practice of auditing IIM accounts. In response to

---

**3.** Presumably, even defendants would not try to argue that the GAO might have conducted a final comprehensive audit of hundreds of thousands of IIM accounts, but for some rea-

son completely failed to include even a passing reference to this audit in any of the records that it has maintained.

this assertion, defendants cite only the documents mentioned above, which the Court has reviewed and found to contain no evidence that the GAO has ever conducted an accounting of IIM accounts. These records are also bereft of any evidence that the GAO engaged in any regular practice of auditing IIM accounts. Therefore, because plaintiffs have satisfied their burden of production, and defendants have failed to produce any evidence indicating that the GAO has ever engaged in the regular practice of auditing IIM accounts, the Court will enter summary judgment for plaintiffs as to this issue.

5. *Whether Principal Assistant Comptroller General Gene L. Dodaro informed former Assistant Interior Secretary John Berry on August 27, 1999 that GAO previously had informed officials from the Departments of Justice, Treasury, and the Interior that GAO has never conducted an accounting of individual Indian trust accounts, never conducted a final comprehensive audit of individual Indian trust accounts, and never engaged in a regular practice of auditing individual Indian trust accounts.*

■ This assertion does not represent a statement of fact that can be affirmed or controverted, but instead represents plaintiffs' summary of the contents of the letter sent by Gene Dodaro to John Berry. Therefore, the Court will deny summary judgment for plaintiffs as to this issue.

6. *Whether, at any time, GAO settled individual Indian trust accounts.*

■ As noted above, the Court understands the terms "accounting" and "settlement of accounts" to be synonymous. It would appear that defendants share this understanding, because their response to

this assertion consists solely of documents cited in response to Statements 1 and 2. Accordingly, the Court will enter summary judgment in favor of plaintiffs that at no time did the GAO ever settle IIM accounts.

7. *Whether individual Indian trust accounts have ever been certified.*

■ Unlike terms such as "accounting" and "audit," which have generally recognized meanings at law, the term "certification" does not have a fixed meaning at law. *See* BLACK'S LAW DICTIONARY 226 (7th ed.1999) (defining "certify" variously as "[t]o authenticate or verify in writing" or "[t]o attest as being true or as meeting certain criteria"). Additionally, neither *Scott on Trusts* nor the *Restatement (Second) of Trusts* establishes or even discusses any standard for certifying account balances when a trustee performs an accounting. Because it lacks a definite standard by which to adjudicate this issue, the Court will deny summary judgment for plaintiffs as to this issue.

8. *Whether individual Indian trust accounts are legally distinct from disbursing officer accounts.*

■ This statement represents a conclusion of law, not a statement of fact. Therefore, the Court will deny summary judgment for plaintiffs as to this issue.

9. *Whether any certified record of individual Indian Trust account balances as of 1951 exists.*

■ Because the term "certified" lacks a fixed meaning at law, plaintiffs have failed to provide credible evidence that no certified record of individual Indian trust account balances as of 1951 exists. Therefore, plaintiffs have failed to satisfy their burden of production, and the Court will

deny summary judgment for plaintiffs as to this issue.

10. *Whether there have been any examinations of individual Indian trust accounts to ensure the propriety and accuracy of trust balances.*

■ The sole evidence cited by plaintiffs on this issue consists of a passage in the Gamboa letter stating that "[o]nly an examination of the records of the IIM account itself would ensure the propriety and accuracy of amounts credited and withdrawn..." This statement does not constitute evidence that would entitle plaintiffs to a directed verdict that there have been no examinations of individual Indian trust accounts to ensure the propriety and accuracy of trust balances. Therefore, plaintiffs have failed to satisfy their burden of production, and the Court will deny summary judgment for plaintiffs as to this issue.

11. *Whether any statements of account have been rendered for individual Indian trust accounts.*

■ Plaintiffs have directed the Court to a sentence in the Gamboa letter stating that "[o]nly an examination of the records of the IIM account itself would ... reconcile transactions with a statement of the account..." This statement does not constitute evidence that no statements of account have been rendered for individual Indian trust accounts. Therefore, plaintiffs have failed to satisfy their burden of production, and the Court will deny summary judgment for plaintiffs as to this issue.

12. *Whether, at any time, GAO has maintained records of certified balances of individual Indian trust accounts.*

■ For the reasons stated by the Court in its discussion of Statement 7, the

Court will deny summary judgment for plaintiffs as to this issue.

13. *Whether the amount of funds held in individual Indian trust accounts cannot be ascertained because of the loss, destruction, and corruption of trust records.*

■ Plaintiffs have failed to direct the Court to any evidence that, if uncontroverted, would entitle them to a directed verdict that the amount of funds held in the IIM accounts cannot be ascertained because of the loss, destruction, and corruption of the trust records. Therefore, plaintiffs have failed to satisfy their burden of production, and the Court will deny summary judgment for plaintiffs as to this issue.

14. *Whether any reports that certify the balances of individual Indian trust accounts as accurate exist.*

■ For the reasons stated by the Court in its discussion of Statement 7, the Court will deny summary judgment for plaintiffs as to this issue.

15. *Whether it is possible to certify that disbursements from individual Indian trust accounts have been and are made to the correct individual Indian trust beneficiaries in the correct amounts.*

■ Plaintiffs have directed the Court to a sentence in the Gamboa letter stating that in 1929, GAO reported: "No detail check could be made of all revenues accruing to the individual Indians to determine that each received all to which he was entitled, nor could the expenditures thereof, authorized by the superintendents, be examined to see that the Indian received the full measure of benefit to which he was entitled." This statement does not consti-

tute evidence that it is not possible to certify that disbursements from IIM accounts have been and are made to the correct beneficiaries in the correct amounts. Therefore, plaintiffs have failed to satisfy their burden of production, and the Court will deny summary judgment for plaintiffs as to this issue.

16. *Whether it is possible to certify that disbursements authorized by Bureau of Indian Affairs (BIA) agency superintendents from individual Indian trust accounts have been and are made to the correct individual Indian trust beneficiaries in the correct amounts.*

■ Plaintiffs have directed the Court to the sentence quoted above in the Court's discussion of Statement 15. This statement does not constitute evidence that it is not possible to certify that disbursements authorized by BIA agency superintendents from IIM accounts have been and are made to the correct beneficiaries in the correct amounts. Therefore, plaintiffs have failed to satisfy their burden of production, and the Court will deny summary judgment for plaintiffs as to this issue.

17. *Whether GAO possesses any copies of Statements of Outstanding Checks for the years 1932 through 1955.*

■ The Gamboa letter reports that "in May 1999, in response to a request from Treasury for copies of Forms 5046 (Statement of Outstanding Checks) for the years 1932 through 1955, we confirmed that we do not have those records." This statement constitutes credible evidence that GAO does not possess any copies of Statements of Outstanding Checks for these years. Defendants have admitted that the GAO does not possess any copies

of such statements for these years. Accordingly, the Court will grant summary judgment for defendants that the GAO possesses no copies of Statements of Outstanding Checks for the years 1932 through 1955.

## III. CONCLUSION

For the reasons herein stated, it is hereby

ORDERED that plaintiffs' motion for partial summary judgment as to the non-settlement of accounts and defendants' failure to perform the accounting, in whole or in part, order by this Court on December 21, 1999 [1777–1] be GRANTED in part and DENIED in part. It is further

ORDERED that summary judgment be, and hereby is, GRANTED as to the following five (5) issues:

1. At no time has the General Accounting Office (GAO) conducted an accounting of any individual Indian trust accounts.
2. At no time has the GAO conducted a final comprehensive audit of individual Indian trust accounts.
3. At no time has the GAO engaged in any regular practice of auditing individual Indian trust accounts.
4. At no time did the GAO settle individual Indian trust accounts.
5. The GAO possesses no copies of Statements of Outstanding Checks for the years 1932 through 1955.

It is further ORDERED that summary judgment be, and hereby is, DENIED as to the remaining twelve (12) issues raised in plaintiffs' motion for partial summary judgment.

SO ORDERED.